**FILED**

MAY 0 5 2015

Clerk, U.S. District Court
District Of Montana
Helena

Rob Cameron
Jeffrey M. Hindoien
Nathan Bilyeu
GOUGH, SHANAHAN, JOHNSON & WATERMAN, PLLP
33 S. Last Chance Gulch
P.O. Box 1715
Helena, MT 59624-1715
Phone:   406.442.8560
Fax:      406.442.8783
Email:   rtc@gsjw.com
           jeffh@gsjw.com
           nb@gsjw.com

*Attorneys for Plaintiff*

\* \* \* \* \* \* \*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| VERACOLOR, SA, a Panama company,<br><br>        Plaintiff,<br><br>vs.<br><br>VORA, INC., a Delaware corporation, and ROGER LANG, an individual,<br><br>        Defendants. | Case No.: _IN·15·20·BU·SEH_<br><br><br>**COMPLAINT** |

Plaintiff, Veracolor, SA, a Panama company ("Veracolor" or "Plaintiff"), by

and through its attorneys, for its Complaint against Defendants, Vora, Inc., a

1

Delaware corporation ("Vora"), and Roger Lang, an individual ("Lang"), states as follows:

## JURISDICTION AND VENUE

1.      This is an action for fraud, constructive fraud, negligence, negligent misrepresentation, violation of the Securities Exchange Act of 1934, violation of the Montana Securities Act, and unjust enrichment.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as complete diversity exists between the parties and the amount in controversy is in excess of $75,000.00.  This action also arises under the laws of the United States, and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

2.      Roger Lang is a resident of and conducts business in Gallatin County, Montana.  A substantial part of the acts and occurrences giving rise to the claims made in this action occurred within this District.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), and proper in this Division by virtue of Defendant Lang's residence.

## PARTIES

3.      Veracolor, SA, (hereafter "Veracolor") is a company organized and existing under the laws of the country of Panama, and has its regular and established place of business in Panama City, Panama.

4.     Vora, Inc. (hereafter "Vora") is a corporation incorporated under the laws of the State of Delaware and, at all times relevant to this Complaint, maintained a principal place of business located at 1498 Zephyr Avenue, Hayward, California 84545.

5.     Roger Lang (hereafter "Lang") is an individual who, upon information and belief, resides at 14 South Willson, Bozeman, Montana 59715-6232.

## FACTS COMMON TO ALL CLAIMS

6.     Lang was a former Silicon Valley software company entrepreneur and, at all times relevant to this Complaint, was the Chief Executive Officer and promoter of Vora.

7.     Vora was incorporated on January 5, 2012, as a start-up company which, according to it, was looking to make and distribute next-generation lubrication products that save money, extend the life of engines, and decrease an engine's carbon emissions.

8.     In order to do so, Vora sought $2,000,000.00 in initial equity funding from investors in the first quarter of 2012, and an additional $5,000,000.00 in the fall of 2012.

9.     On or about March 29, 2013, Lang was introduced to a Veracolor representative, Mohamed Ben Salah ("Ben Salah"), through a mutual friend, Hugues Delannoy ("Delannoy"), as a potential investor in Vora.

10.   Lang served as the primary point of contact for the potential investors in Vora, including Veracolor, and on or about March 29, 2013, distributed investment information to Veracolor including a document entitled "Vora Oil: Propelling the World of Machines" (the "Vora Narrative"). (A copy of the Vora Narrative is attached hereto and incorporated herein as Exhibit 1.)

11.   The Vora Narrative contained numerous representations including, but not limited to, the following:

(a)   Vora's mission is to "provide a suite of premiere industrial lubricants to help any industry achieve significant savings through reduced oil consumption… while increasing fuel efficiency and engine life and emitting *less pollution* (emphasis added)."

(b)   Vora's business model is "to distribute the *pure clean formula* to 'blenders,' who would in turn locally blend Vora's *clean formula* with their preferred base oil to create private labeled products for sale (emphasis added)."

(c)   The "product increases mileage per gallon, reduces waste oil, decreases emissions, increases longevity of an engine lifespan, and *does not use harmful ingredients* (emphasis added)."

(d)   That Vora was possessed of a "*proprietary, secret clean formula*" that had been vetted by an independent laboratory for chemical composition and toxicity (emphasis added).

12.   On or about April 13, 2013, Lang emailed Ben Salah several documents for his signature in order to finalize Veracolor's investment in Vora, including an Investor Rights Agreement; Stock Purchase Agreement; and a term sheet (the "Investor Documents").

4

13.   On or about May 7, 2013, based upon the representations in the Vora Narrative, Veracolor wire transferred $300,000.00 to Vora's Wells Fargo bank account.

14.   Although Veracolor transferred the $300,000.00 on May 7, 2013, Ben Salah had not yet signed the Investor Documents.

15.   On June 13, 2013, Lang sent an email to Veracolor requesting that Ben Salah "sign paperwork to close the books on the seed capital investment round." In the same email, Lang assured Veracolor that "the business is going very well."

16.   On June 25, 2013, Lang re-sent the Investor Documents to Veracolor via email and again asked for Ben Salah to sign the Investor Documents and return them to him.

17.   On June 29, 2013, Lang sent another email to Veracolor inquiring as to whether Ben Salah had signed the Investor Documents which Lang had re-sent to him on June 25, 2013.

18.   On July 15, 2013, Ben Salah emailed Lang inquiring whether Lang had received the signed Investor Documents.

19.   On that same date, Lang responded to Ben Salah by email stating that he had received the signed Investor Documents. Lang also stated that he would write a letter to all Vora investors later in the week. (A true and correct copy of the above-referenced email string is attached hereto and incorporated herein as Group

5

Exhibit 2, and a certified translation of Group Exhibit 2 is attached hereto and incorporated herein as Exhibit 3.)

20.   On July 31, 2013, Lang sent an investor update email letter.  (A true and correct copy of Lang's July 31, 2013, letter is attached hereto and incorporated herein as Exhibit 4.)

21.   In the Vora investor update letter, Lang notified the investors, including Veracolor, that "since mid-May, several unfolding areas of concern have brought into question whether VORA can become a viable business." Ex. 4.

22.   According to Lang, the reason for concern about whether Vora could become a viable business was twofold. First, "that the board of directors and I are wary that the *past 6 months* of market uptake for VORA's motor oil product could portray a growth rate that is too slow to be a viable business in the near future." Second, and related, was because of Lang's "evolving awareness that shifting US regulations may make it ever tougher to utilize the core of VORA's invention in motor oils, at least domestically (emphasis added)." Ex. 4.

23.   Therefore, Lang concluded that "there is a distinct possibility that the board and I could recommend that VORA cease the manufacturing and selling of finished motor oil products… ." Ex. 4.

24.   On October 16, 2013, Lang emailed the Vora investors, including Veracolor, that the board of directors decided that Vora would be shut down.  (A

true and correct copy of the email is attached hereto and incorporated herein as Exhibit 5.)

25.   Lang also stated in the October 16, 2013, email, "[a]t the December, 2012 shareholder meeting in Hayward, I acknowledged that the U.S. EPA had been signaling an effort to promote regulatory awareness and eventual restrictions on certain elements of VORA's core formula." Ex. 5.

26.   Indeed, as finally acknowledged by Lang in an April 17, 2014 email to Delannoy, the Vora formula included medium-chain chlorinated paraffins. (A true and correct copy of the April 17, 2014 email is attached hereto and incorporated herein as Exhibit 6.)

27.   On February 7, 2012, the Environmental Protection Agency ("EPA") released an article regarding chlorinated paraffins, including medium-chain chlorinated paraffins, the chemical found in Vora oil. (A true and correct copy of the EPA article is attached hereto and incorporated herein as Exhibit 7.)

28.   According to the EPA, short-chain chlorinated paraffins have been found to be bioaccumulative in wildlife and humans, persistent and transported globally in the environment, and toxic to aquatic animals at low concentrations. Ex. 7.

29.   Therefore, the EPA developed an action plan for these chemicals based on the potential for significant impacts on the environment. Ex. 7.

30.   The EPA also noted, "[t]he environmental and health concerns relating to medium-chain chlorinated paraffins and long-chain chlorinated paraffins may be similar to those associated with short-chain chlorinated paraffins.  Those chemicals may also be persistent and bioaccumulative based on their physical-chemical properties, bioaccumulation modeling, and because they are also found in the environment." Ex. 7.

31.   On December 18, 2013, given that Vora was shutting down business due to concerns over the toxicity of medium-chain chlorinated paraffins contained in the Vora formula, Delannoy emailed Lang asking him what Delannoy should explain to Ben Salah about the Vora shut down.

32.   On December 18, 2013, Lang emailed Delannoy stating "[t]he only red flag raised was the corrosive nature of chlorine in general, and it was determined that our anti-oxidants could resolve that point."  (A copy of Lang's December 18, 2013, email is attached hereto and incorporated herein as Exhibit 8.)

33.   Lang further stated "[t]he Koreans [from whom Vora allegedly purchased the rights to the formula] kept the formula secret from me until very late claiming that 'secret sauce' is stronger protection, led by Ken Lee's legal assessment." Ex. 8.

34.   Lang further stated that "[o]nce the formula came to the surface and CP's were front-stage, I began my own research, around May [2013]... ." Ex. 8.

8

35.   Lang further stated that "I don't know what more I could have done, *but clearly I should have done more* (emphasis added)." <u>Ex. 8</u>.

36.   Lang further stated with respect to Ken Lee's assessment that the formula should remain secret, even from Lang (Vora's CEO), "*How naïve I was to believe him* (emphasis added)." <u>Ex. 8</u>.

37.   On February 5, 2014, Lang emailed Delannoy and stated that the reason for the Vora shut down was "a case of bad timing, of best intent not met, and probably many other things *including mistakes made by me* and others (emphasis added)." (A true and correct copy of Lang's February 5, 2014 email is attached hereto and incorporated herein as <u>Exhibit 9</u>.)

38.   On or about April 23, 2014, Veracolor demanded that Vora return the $300,000.00 that it had invested in Vora.

39.   Despite Veracolor's demand, Vora has failed and refused to return the $300,000.00 to Veracolor.

## COUNT I
## FRAUD

40.   Plaintiff incorporates, repeats and re-alleges paragraphs 1 through 39 as if fully set forth in this Count I.

41.   Defendants made numerous representations to Plaintiff before Plaintiff invested in Vora including:

9

(a)     Vora's mission is to "provide a suite of premiere industrial lubricants to help any industry achieve significant savings through reduced oil consumption… while increasing fuel efficiency and engine life and emitting *less pollution* (emphasis added)."

(b)     Vora's business model is "to distribute the *pure clean formula* to 'blenders,' who would in turn locally blend Vora's *clean formula* with their preferred base oil to create private labeled products for sale (emphasis added)."

(c)     The "product increases mileage per gallon, reduces waste oil, decreases emissions, increases longevity of an engine lifespan, and *does not use harmful ingredients* (emphasis added)."

(d)     That Vora was possessed of a *"proprietary, secret clean formula"* that had been vetted by an independent laboratory for chemical composition and toxicity (emphasis added).

(e)     That "the business is going very well."

42.     Defendants' representations to Plaintiff were false in that the Vora formula included medium-chain chlorinated paraffins and the business was not doing well.

43.     Defendants' representations to Plaintiff were material in that they concerned a significant component in Vora's only product – one industrial lubricant, and in that they misrepresented the business prospects of Vora when seeking investment funds from Veracolor.

44.     Defendants knew of the falsity of their representations or were ignorant of the truth of the representations at the time they made them to Plaintiff. Specifically, Defendants knew the statements (a), (b), (c) and (d) (as referenced in

10

¶ 41) were false when they were made, as Roger Lang admitted "[a]t the December, 2012 shareholder meeting in Hayward, I acknowledged that the U.S. EPA had been signaling an effort to promote…eventual restrictions on certain elements of VORA's core formula." At a minimum, the apologetic statements made in Lang's December 18, 2013, email indicate that he was unaware of the chemical composition of the Vora lubricant product which he refers to as the "secret sauce," and therefore was ignorant of the truth of statements (a), (b), (c) and (d) when he made them.

45.     Furthermore, Lang admitted in his July 31, 2013, investor update letter that Vora had received poor market data for the **past 6 months** which indicated "a growth rate that is too slow to be a viable business…." Accordingly, Defendants knew that their June 13, 2013, representation claiming that "the business is going very well" was false at the time they made the statement attendant to the request that Veracolor sign the paperwork and "close the books" on the investment.

46.     Defendants intended that Plaintiff rely on their representations in order to induce Plaintiff to invest $300,000.00 in Vora, as evidenced by Lang's provision of the representations and follow-up inquiries, detailed above, urging Veracolor to sign the Investor Documents.

47.     Plaintiff did not know of the falsity of Defendants' representations.

11

48.    Plaintiff relied on Defendants' representations when considering investing $300,000.00 in Vora.

49.    Plaintiff had a right to rely on Defendants' representations when considering investing $300,000.00 in Vora, because the reliance was subjectively reasonable under the totality of the circumstances including, but not limited to, the dependent nature of the parties' relationship (Veracolor was reliant upon Defendants to provide non-public information regarding Vora's lubricant product and business prospects), the nature of the transaction (a request for investment made by Vora's CEO and promoter), the relative complexity of the subject matter (the relevant information involved complex scientific data and market analysis relying on non-public data), and the parties' relative means to ascertain the truth regarding the subject matter of the representations (the relevant data was uniquely available to Defendants who controlled entirely the extent to which such non-public information was shared with Veracolor).

50.    As a direct and proximate cause of Plaintiff's reliance on Defendants' representations, Plaintiff was damaged in the amount of its $300,000.00 investment plus interest, costs, and reasonable attorneys' fees incurred in filing and litigating this case.

////

////

## COUNT II
## CONSTRUCTIVE FRAUD
### *(In the Alternative to Count I)*

51.     Plaintiff incorporates, repeats and re-alleges paragraphs 1 through 39

as if fully set forth in this Count II.

52.     Defendants made numerous representations to Plaintiff before

Plaintiff invested in Vora including:

      (a)     Vora's mission is to "provide a suite of premiere industrial
lubricants to help any industry achieve significant savings through reduced
oil consumption… while increasing fuel efficiency and engine life and
emitting *less pollution* (emphasis added)."

      (b)     Vora's business model is "to distribute the *pure clean formula*
to 'blenders,' who would in turn locally blend Vora's *clean formula* with
their preferred base oil to create private labeled products for sale (emphasis
added)."

      (c)     The "product increases mileage per gallon, reduces waste oil,
decreases emissions, increases longevity of an engine lifespan, and *does not
use harmful ingredients* (emphasis added)."

      (d)     That Vora was possessed of a "*proprietary, secret clean
formula*" that had been vetted by an independent laboratory for chemical
composition and toxicity (emphasis added).

      (e)     That "the business is going very well."

53.     Defendants' representations created a false impression in Plaintiff

concerning important matters with respect to the Vora formula and Vora's business

prospects.

54.     The non-disclosed information regarding the Vora formula and Vora's

poor market uptake data were material to the subject investment transaction because 1) a reasonable person would attach importance to the non-disclosed information when deciding whether to invest in Vora, and (2) the Defendants knew or had reason to know that Plaintiff regarded or was likely to regard the representations as important in determining its choice of action—as evidenced by the highlighting of the information during efforts to obtain Veracolor's investment commitment.

55.    Defendants were under a special duty to make such disclosures as would erase the false impressions created in the mind of the Plaintiff, because Defendants were seeking Plaintiff's investment and were aware of relevant scientific and business information that Plaintiff did not have access to and which would have revealed the falsity of Defendants' representations.

56.    Despite being actually aware of the relevant Vora product and business information, Defendants subsequently failed to disclose the relevant facts until well after Plaintiff invested in Vora.

57.    Defendants' failure to disclose the relevant facts before Plaintiff invested in Vora constituted a breach of their duty to Plaintiff.

58.    Defendants gained a material advantage through the breach of their duty by securing the $300,000.00 investment by Plaintiff.

59.    Plaintiff had a right to rely on Defendants' representations when

14

considering investing $300,000.00 in Vora, because the reliance was subjectively reasonable under the totality of the circumstances including but not limited to the dependent nature of the parties' relationship (Veracolor was reliant upon Defendants to provide non-public information regarding Vora's lubricant product and business prospects), the nature of the transaction (a request for investment from Vora's CEO and promoter), the relative complexity of the subject matter (the relevant information involved complex scientific information and market analysis relying on non-public data), and the parties' relative means to ascertain the truth regarding the subject matter (the relevant data was uniquely available to Defendants who controlled entirely the extent to which such non-public information would be shared with Veracolor).

60.    Plaintiff was prejudiced by Defendants' breach in that, had it known the relevant facts, it would not have invested in Vora.

## COUNT III
## NEGLIGENCE

61.    Plaintiff incorporates, repeats and re-alleges paragraphs 1 through 39 as if fully set forth in this Count III.

62.    Defendants had a duty to exercise the level of care that a reasonably prudent person would under the same or similar circumstances.

63.    Defendants' breach of their duty to Plaintiff includes, but is not limited to, when they:

15

(a) Failed to discover at an earlier date the ingredients of the Vora formula;

(b) Failed to disclose the ingredients and corresponding EPA regulations to Plaintiff once they discovered them;

(c) Made misrepresentations to Plaintiff about the lack of harmful ingredients and cleanliness of the Vora formula; and

(d) Failed to accurately convey the financial viability of Vora in a timely manner.

64.    As a direct and proximate cause of Defendants' breaches, Plaintiff invested $300,000.00 in Vora.

65.    As a direct and proximate cause of Defendants' breaches, Plaintiff has been damaged in the amount of $300,000.00, plus interest and costs.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### (In the Alternative to Count III)

66.    Plaintiff incorporates, repeats and re-alleges paragraphs 1 through 39 as if fully set forth in this Count IV.

67.    Defendants made numerous representations to Plaintiff about existing material facts before Plaintiff invested in Vora including, but not limited to:

(a)    Vora's mission is to "provide a suite of premiere industrial lubricants to help any industry achieve significant savings through reduced oil consumption… while increasing fuel efficiency and engine life and emitting *less pollution* (emphasis added)."

(b)    Vora's business model is "to distribute the *pure clean formula* to 'blenders,' who would in turn locally blend Vora's *clean formula* with

their preferred base oil to create private labeled products for sale (emphasis added)."

(c)     The "product increases mileage per gallon, reduces waste oil, decreases emissions, increases longevity of an engine lifespan, and *does not use harmful ingredients* (emphasis added)."

(d)     That Vora was possessed of a "*proprietary, secret clean formula*" that had been vetted by an independent laboratory for chemical composition and toxicity (emphasis added).

(e)     That "the business is going very well."

68.     In the course of their business, Defendants' made numerous representations regarding the parties' business transaction, including but not limited to those listed above, that were false or misleading.

69.     Defendants made the representations without any reasonable ground for believing them to be true, and thereby breached their duty to take reasonable care to avoid making injuriously false or misleading statements.

70.     Plaintiff was one of a limited group of persons for whose benefit and guidance the Defendants intended to supply the misleading information, and Plaintiff relied on the information in a transaction that the Defendants knew the information would influence.

71.     Plaintiff was unaware of the falsity of Defendants' representations; acted in reliance upon the truth of Defendants' representations by investing $300,000.00 in Vora; and was justified in its reliance upon Defendants' representations in making its investment.

17

72.     As a result of Plaintiff's reliance, it incurred damages in the amount of $300,000.00, plus interest and costs.

## COUNT V
## VIOLATION OF SECURITIES EXCHANGE ACT OF 1934, § 10(b)

73.     Plaintiff incorporates, repeats and re-alleges paragraphs 1 through 39 as if fully set forth in this Count V.

74.     Defendants made numerous misrepresentations or omissions of material facts related to Plaintiff's investment in Vora including:

(a)     Vora's mission is to "provide a suite of premiere industrial lubricants to help any industry achieve significant savings through reduced oil consumption... while increasing fuel efficiency and engine life and emitting *less pollution* (emphasis added)."

(b)     Vora's business model is "to distribute the *pure clean formula* to 'blenders,' who would in turn locally blend Vora's *clean formula* with their preferred base oil to create private labeled products for sale (emphasis added)."

(c)     The "product increases mileage per gallon, reduces waste oil, decreases emissions, increases longevity of an engine lifespan, and *does not use harmful ingredients* (emphasis added)."

(d)     That Vora was possessed of a "*proprietary, secret clean formula*" that had been vetted by an independent laboratory for chemical composition and toxicity (emphasis added).

(e)     That "the business is going very well."

(f)     Failing to disclose the ingredients of the Vora formula and corresponding EPA regulations to Plaintiff once they discovered them.

75.     Defendants knew of the falsity and materiality of their representations

and the materiality of their omissions.  Specifically, Defendants knew the
statements (a), (b), (c) and (d) (referenced in ¶ 74) were false when they were
made, as Roger Lang admitted "[a]t the December, 2012 shareholder meeting in
Hayward, I acknowledged that the U.S. EPA had been signaling an effort to
promote…eventual restrictions on certain elements of VORA's core formula."

76.     Furthermore, Lang admitted in his July 31, 2013, investor update
letter that Vora had received poor market data for the **past 6 months** which
indicated "a growth rate that is too slow to be a viable business…."  Accordingly,
Defendants knew that their June 13, 2013, representation claiming that "the
business is going very well" was false at the time they made the statement to
Plaintiff attendant to their request that it sign the paperwork to "close the books"
on the investment.

77.     The false and omitted information regarding the Vora formula and
Vora's poor market uptake data were material to the subject investment
transaction.  Had Veracolor been aware of the information in the Defendants'
possession concerning the Vora formula and/or the information they should have
reasonably known regarding the formula, and its market uptake data, it would have
significantly altered the total mix of information being made available to Veracolor
by the Defendants with respect to the investment.  Had the misrepresentations not
been made or had the truth been disclosed by the Defendants, Plaintiff would not

have invested in Vora.

78.    Defendants acted intentionally and with deliberate recklessness or conscious misconduct in making the above misrepresentations and omissions.

79.    Plaintiff relied on Defendants' misrepresentations and omissions when investing the $300,000.00 in Vora.

80.    Had the misrepresentations had not been made, or had the truth been disclosed by Defendants, Plaintiff would not have invested in Vora.

81.    As a direct and proximate cause of Defendants' misrepresentations and omissions, Plaintiff has been damaged in the amount of $300,000.00, plus interest, costs, and attorneys' fees.

**COUNT VI**
**VIOLATION OF MONTANA SECURITIES ACT,**
**MONT. CODE ANN. §§ 30-10-301(b) and (c)**

82.    Plaintiff incorporates, repeats and re-alleges paragraphs 1 through 39 as if fully set forth in this Count VI.

83.    Defendants made numerous untrue statements of material fact and omissions of material fact related to Plaintiff's investment in Vora including:

(a)    Vora's mission is to "provide a suite of premiere industrial lubricants to help any industry achieve significant savings through reduced oil consumption... while increasing fuel efficiency and engine life and emitting *less pollution* (emphasis added)."

(b)    Vora's business model is "to distribute the *pure clean formula* to 'blenders,' who would in turn locally blend Vora's *clean formula* with

their preferred base oil to create private labeled products for sale (emphasis added)."

(c)     The "product increases mileage per gallon, reduces waste oil, decreases emissions, increases longevity of an engine lifespan, and *does not use harmful ingredients* (emphasis added)."

(d)     That Vora was possessed of a "*proprietary, secret clean formula*" that had been vetted by an independent laboratory for chemical composition and toxicity (emphasis added).

(e)     That "the business is going very well."

(f)     Failing to disclose the ingredients of the Vora formula and corresponding EPA regulations to Plaintiff once they discovered them.

84.     Defendants knew of the falsity and materiality of their representations and the materiality of their omissions.  Specifically, Defendants knew the statements (a), (b), (c) and (d) (referenced in ¶ 83) were false when they were made, as Roger Lang admitted "[a]t the December, 2012 shareholder meeting in Hayward, I acknowledged that the U.S. EPA had been signaling an effort to promote…eventual restrictions on certain elements of VORA's core formula."

85.     Furthermore, Lang admitted in his July 31, 2013, investor update letter that Vora had received poor market data for the **past 6 months** which indicated "a growth rate that is too slow to be a viable business…."  Accordingly, Defendants knew that their June 13, 2013, representation claiming that "the business is going very well" was false at the time they made the statement to Plaintiff attendant to their request that it sign the paperwork to "close the books"

on the investment.

86.     The false and omitted information regarding the Vora formula and Vora's poor market uptake data were material to the subject investment transaction.  Had Veracolor been aware of the information in the Defendants' possession concerning the Vora formula and/or the information they should have reasonably known regarding the formula, and its market uptake data, it would have significantly altered the total mix of information being made available to Veracolor by the Defendants with respect to the investment.  Had the misrepresentations not been made or had the truth been disclosed by the Defendants, Plaintiff would not have invested in Vora.

87.     Defendants acted intentionally and with deliberate recklessness or conscious misconduct in making the above misrepresentations and omissions.

88.     Plaintiff relied on Defendants' misrepresentations and omissions when investing the $300,000.00 in Vora.

89.     As a direct and proximate cause of Defendants' untrue statements of material fact and omissions of material fact, Plaintiff has been damaged in the amount of $300,000.00, plus interest, costs, and attorneys' fees.

## COUNT VII
## UNJUST ENRICHMENT

90.     Plaintiff incorporates, repeats and re-alleges paragraphs 1 through 39 as if fully set forth in this Count VII.

22

91.     Defendants made numerous misrepresentations and omissions of

material fact related to Plaintiff's investment in Vora including, but not limited to:

(a)     Vora's mission is to "provide a suite of premiere industrial
lubricants to help any industry achieve significant savings through reduced
oil consumption… while increasing fuel efficiency and engine life and
emitting *less pollution* (emphasis added)."

(b)     Vora's business model is "to distribute the *pure clean formula*
to 'blenders,' who would in turn locally blend Vora's *clean formula* with
their preferred base oil to create private labeled products for sale (emphasis
added)."

(c)     The "product increases mileage per gallon, reduces waste oil,
decreases emissions, increases longevity of an engine lifespan, and *does not
use harmful ingredients* (emphasis added)."

(d)     That Vora was possessed of a "*proprietary, secret clean
formula*" that had been vetted by an independent laboratory for chemical
composition and toxicity (emphasis added).

(e)     That "the business is going very well."

(f)     Failing to disclose the ingredients of the Vora formula and
corresponding EPA regulations to Plaintiff once they discovered them.

92.     Defendants' acts and omissions constituted misconduct and

Defendants thereby took advantage of Plaintiff by inducing Plaintiff to invest in

Vora.

93.     Defendants have retained the benefit of Plaintiff's $300,000.00

investment without providing compensation, where Plaintiff reasonably expected

compensation.

23

94.     As a direct and proximate cause of Defendants' misconduct, Plaintiff has been damaged in the amount of $300,000.00, plus interest, costs, and attorneys' fees.

**WHEREFORE**, Plaintiff, Veracolor SA, requests this Court to enter judgment in its favor and against Defendants, Vora, Inc. and Roger Lang:

1.     Judgment in the amount of $300,000.00 for Plaintiff's investment in Vora;

2.     Punitive damages pursuant to Mont. Code Ann. § 27-1-221;

3.     Interest at 10% per annum from the date of Plaintiff's investment in Vora pursuant to Mont. Code Ann. §30-10-107; for reasonable attorney fees and costs pursuant to, *inter alia*, Mont. Code Ann. §30-10-307; and

4.     Such other and further relief to which Plaintiff may be entitled and the Court deems appropriate and just.

DATED May 5, 2015.

GOUGH, SHANAHAN, JOHNSON & WATERMAN, PLLP

By: _____
Rob Cameron
*Attorneys for Plaintiff Veracolor, SA*